**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

In re: Hester Regina Braddy,                                        Case No. 19-36030-KLP
                    Debtor.                                                Chapter 13

## MEMORANDUM OPINION

Before the Court is the Amended Chapter 13 plan (the "Amended Plan") filed by debtor Hester Regina Braddy (the "Debtor"), to which the Chapter 13 Trustee (the "Trustee") has objected. Also before the Court is the Trustee's motion to convert the Debtor's case to chapter 7 or dismiss it with prejudice (the "Motion"). The Debtor opposes the Motion and seeks confirmation of the Amended Plan.

On September 30, 2024, the parties submitted a joint stipulation of facts (the "Stipulation"). The Court held an evidentiary hearing on October 2, 2024. The parties submitted memoranda of law before and after the evidentiary hearing. The evidence consists of the Stipulation, the testimony of the Debtor, who was the only person to testify at the hearing, and various documents filed on the docket, of which the Court has taken judicial notice.

## Facts and Positions of the Parties

The Court finds the following facts based on the record in this bankruptcy case, the Stipulation, and the credible, uncontroverted testimony of the Debtor.

The Debtor commenced this case by filing a voluntary petition under Chapter 13 on November 15, 2019. The Debtor filed her first chapter 13 plan on November 15, 2019, which the Court confirmed on January 21, 2020. At the commencement of her case, the Debtor was represented by attorney Matthew Throop. Mr. Throop

informed the Debtor that if her address, employment, or contact information changed during the pendency of her case, she was required to report it to him. He did not tell her that she was required to report changes in her financial situation. After Mr. Throop's untimely death, on July 31, 2020, the Court authorized Stephen Flores' substitution as counsel for the Debtor. (ECF 16) Mr. Flores has represented the Debtor since that time.

After the Debtor filed for bankruptcy and after confirmation of her first chapter 13 plan, on or around June 2021, the Debtor and her father, Mack Braddy, Jr. ("Mr. Braddy"), met with an attorney to discuss estate planning for Mr. Braddy. At that time, the Debtor was acting as her father's caregiver. Since her mother had passed away and her father was unable to take care of the home, Mr. Braddy wanted the Debtor to be able to move in and live there in case anything happened to him.

On June 18, 2021, Mr. Braddy deeded to the Debtor, by gift, an ownership interest in real property located at 3204 Thompson Street, Henrico, Virginia 23222 (the "Property") as joint tenant with right of survivorship as at common law. Mr. Braddy retained an interest in the Property as the other joint tenant. Although her name was added to the deed, the Debtor did not understand that this caused her to become an immediate owner of or have rights to the Property. The Debtor did not understand that being added to the title may have implications in her bankruptcy case. At that time, the Property was encumbered by a deed of trust with a payoff of

approximately $87,000.00. The tax assessed value of the Property was $110,700.00, although it needed substantial repairs.

On or about August 8, 2022, Mr. Braddy passed away. By operation of law, the Debtor became the sole owner of the Property. The Debtor understood that she was then entitled to move into the Property but did not understand that she would become its sole owner, as she and her siblings considered the Property to be the family home. At the time of her father's death, two of the Debtor's sons and her grandchild lived at the Property. Because none had the ability to assist with paying the mortgage, the Debtor began making mortgage payments on the Property. She remained unaware that her interest in the Property would have implications for her bankruptcy case until she was informed of that by Mr. Flores in April or May 2023.

In turn, counsel for the Debtor informed the Trustee of the Debtor's ownership in the Property in a telephone conversation in or around August 2023. Debtor's counsel informed the Trustee that the value of the Property was at that time unknown, but that Debtor was engaging an appraiser to obtain an appraisal of the Property. In September 2023, the Debtor managed to obtain the funds needed to obtain an appraisal of the Property. At that time, the home was in relatively poor condition, with substantial deferred maintenance including structural issues and problems with its water system. The appraisal valued the Property at $150,000.00.

The Debtor did not immediately move into the Property because she was obligated to pay rent for an apartment where she was residing. Rather, she moved into the Property when her apartment lease expired in August 2023. Prior to the

expiration of the lease, she struggled to pay both rent and the mortgage on the Property. Based on her original confirmed plan, the Debtor paid $855 per month for her apartment. The monthly mortgage on the Property is $849.

Currently, the Debtor lives in the Property with her three sons and her granddaughter, none of whom contribute financially. At the time of the hearing on the Motion and the Amended Plan, the Debtor was bringing home approximately $1200 every two weeks. Her pay was sometimes diminished when she was required to miss time to take care of her third son, who is disabled. In addition to her wages, in 2023, the Debtor received of a tax refund of approximately $6000. The amount of the refund was larger than normal and attributable to a child tax credit received due to the Debtor's taking care of her granddaughter. She used the money for home and car repairs and to catch up on monthly expenses. She also gave a portion to her son to help with her granddaughter's expenses.

The Parties agree that the Debtor's equity in the Property, after exemptions and costs of sale, totals $11,000.00. The Trustee asked the Debtor to account for the $11,000 of equity in the Property by paying that amount over the final 27 months of her plan, which would have required the Debtor to make an additional $400 in monthly payments to the Trustee. The Trustee did not, however, file a motion to modify the Debtor's chapter 13 plan. The Debtor did not file such a modified plan because she is unable to afford paying an additional $400 each month.

On December 19, 2023, U.S. Bank Trust Company ("U.S. Bank"), the holder of the mortgage on the Property, filed a motion for relief from the automatic stay,

asserting that since the filing of the Debtor's bankruptcy case, she had missed making payments on the mortgage totaling $3,037.51 and owed $1,050.00 in legal fees and $199.00 in costs. The Debtor and U.S. Bank entered into a consent order (the "Consent Order") resolving the motion for relief on March 7, 2024. Under the terms of the Consent Order, the Debtor was required to file an amended plan within 21 days. That plan would "provide for the payment of the post-petition arrearage . . . over the life of the Debtor's bankruptcy."[1]

In accordance with the Consent Order, the Debtor filed the Amended Plan on March 28, 2024, along with amendments to the Debtor's schedules reflecting the acquisition of the Property with the related mortgage obligation. The Amended Plan provides for monthly payments of $334.92 for 52 months followed by monthly payments of $417.92 for an additional 8 months, for a total of $20,759.20. The original chapter 13 plan, confirmed by order entered January 21, 2020 (ECF 12), provided for monthly payments of $333.71 for 60 months for a total of $20,022.60. Both plans included a payout of 1% to unsecured creditors. The Amended Plan adds a provision addressing mortgage arrearages in the amount of $3,386.28 to be paid over a period of 43 months. The Debtor is current in her monthly chapter 13 plan payments to the Trustee.

---

[1] On October 9, 2024, U.S. Bank notified the Debtor that due to the default in curing the post-petition arrearage, she had not complied with the terms of the Consent Order and must cure that default within 14 days. The amount necessary to cure the default was $2306.81, according to U.S. Bank. The Debtor was advised that a failure to cure the default could result in the Court's granting relief from the stay without further notice. On October 25, 2024, U.S. Bank filed a "Notice of Cure" in the Debtor's case, stating that the Debtor had cured the default.

The Trustee has not filed a motion to modify the Debtor's confirmed plan. Instead, the Trustee has timely objected to the Amended Plan, as well as filing the Motion seeking conversion or dismissal with prejudice. Both the objection and the Motion center on the Debtor's acquisition of the Property and the Debtor's equity in the Property of $11,000.

In her timely objection to confirmation of the Amended Plan, the Trustee asserts that the Amended Plan fails to provide non-priority, unsecured creditors a dividend equal to what they would receive through a chapter 7 liquidation, thus failing the "best interest of creditors" test of § 1325(a)(4) of the Bankruptcy Code, 11 U.S.C. § 1325(a)(4).[2] The Trustee points to the equity in the Property acquired by the Debtor from her father as the source of additional funds for unsecured creditors.

By the Motion, filed on July 30, 2024, the Trustee alleges that the Debtor's repeated failure to disclose her ownership interests in the Property amounts to bad faith that justifies either conversion to chapter 7 or dismissal of her case with a bar against refiling for a period of twelve months.[3] Namely, the Debtor failed to disclose her interest in the Property until March 28, 2024, despite having been added to the title on June 18, 2021 and having acquired full ownership of the Property on August 8, 2022 as a result of her father's death. The Trustee points out that it was only after U.S. Bank moved for relief from the automatic stay in December 2023 that the

---

[2] Unless otherwise noted, all references to the Bankruptcy Code or any code section are to 11 U.S.C. §§ 101-1532.

[3] Section 1307(c) allows a court, upon request of an interested party, to dismiss a chapter 13 case or convert it to chapter 7 for cause.

Debtor filed amended schedules to reflect her acquisition of the Property and the

Amended Plan to account for the mortgage arrears of $3386.28.[4] The Trustee

maintains that a finding that the Debtor had engaged in bad faith by failing to

disclose her ownership interests in the Property would entitle a chapter 7 trustee,

upon conversion, to administer the Property.

## **Jurisdiction**

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and

the general order of reference of the U.S. District Court for the Eastern of Virginia

dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and

(L). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

## **Conclusions of Law[5]**

Although the Amended Plan was filed prior to the Motion, were the Trustee

to prevail on the Motion, this case would either be converted or dismissed. In either

instance, confirmation of the Amended Plan would be rendered moot. For that

reason, the Court will initially address the Motion.

### *Trustee's Motion to Dismiss or Convert*

Whether to grant the Trustee's Motion turns on whether the Debtor had the

duty to disclose the acquisition of her interests in the Property and failed to do so.

Numerous courts, including this Court, have held that a chapter 13 debtor has a

---

[4] The Court notes that the parties have stipulated that the Trustee was made aware of the Debtor's
acquisition of an ownership interest in the Property in August 2023.

[5] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed
as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

duty to report a substantial and unanticipated change in his or her financial

condition. *See, e.g.*, *In re Robinson*, No. 18-31989-KLP, 2023 WL 2563537, at *9,

2023 Bankr. LEXIS 699, at *24-26 (Bankr. E.D. Va. Mar. 17, 2023).

> The duty of cooperation under Section 521(a)(3) and Rule
> 4002(a)(4) includes a duty of disclosure for substantial
> and unanticipated changes in the Debtor's financial
> condition. The Chapter 13 Trustee cannot perform his
> duties, and the Court is not in a position to decide
> whether a particular change in financial circumstances
> may be substantial and unanticipated, without disclosure.

*In re Ilyev*, No. 17-12987-KHK, 2022 WL 2965029, at *5, 2022 Bankr. LEXIS 2046,

at *11 (Bankr. E.D. Va. July 26, 2022). In other words, the Debtor would have had a

duty to disclose her interest in the Property if its acquisition was a "substantial and

unanticipated change" in her financial condition. *See In re Robinson*, 2023 WL

2563537, at *9, 2023 Bankr. LEXIS 699, at *25.

The procedural posture of this case is a bit unusual. Typically, upon learning

that a debtor's financial condition has improved because of a substantial and

unanticipated change in circumstances, the chapter 13 trustee will seek to modify

the chapter 13 plan pursuant to § 1329(a) to increase the payout to unsecured

creditors. Conversely, should a debtor's financial condition deteriorate due to a

substantial and unanticipated change in circumstances, the debtor may seek a less

burdensome payment obligation through plan modification.

In this case, the Trustee did not seek modification of the chapter 13 plan,

although her opposition to the Debtor's Amended Plan proposes terms that would

render the plan acceptable in her view. Instead, she chose to seek dismissal or

conversion pursuant to § 1307(c). 11 U.S.C. § 1307(c) (permitting a court, upon request of a party in interest, for cause, to convert a chapter 13 case to one under chapter 7, or dismiss the case, whichever is in the best interests of creditors). Section 1307(c) contains various provisions constituting "cause." The Trustee cites none of § 1037(c)'s enumerated provisions and instead argues that "cause" exists for dismissal with prejudice or conversion to chapter 7 due to the Debtor's alleged bad faith in failing to report her acquisition of her interests in the Property.

Although this matter presents itself in the context of a motion to convert or dismiss, rather than a motion to modify the plan, the "duty to disclose" standard (i.e., whether the Debtor's change in financial circumstances was substantial and unanticipated such that the duty to disclose arose) set forth in the Fourth Circuit's opinions in the cases of *Murphy v. O'Donnell* and *Arnold v. Weast* also applies to determine whether the Motion should be granted. Although both *Murphy* and *Arnold* dealt with § 1329(a) motions to modify a chapter 13 plan, both applied the substantial and unanticipated change in financial circumstances test to make such determinations. The outcome of the Trustee's Motion hinges on the same criteria.

In *Murphy*, the Fourth Circuit held that a confirmed chapter 13 plan cannot be modified unless the debtor experiences a "'substantial' and 'unanticipated' post-confirmation change in his financial condition." *Murphy v. O'Donnell* (*In re Murphy*), 474 F.3d 143, 149 (4th Cir. 2007) (quoting *Arnold v. Weast* (*In re Arnold*), 869 F.2d 240, 243 (4th Cir. 1989)). The party seeking modification bears the burden of demonstrating that the change in the debtor's ability to pay is both substantial

9

and unanticipated. *Id.* (citing *In re Arnold*, 869 F.2d at 243). "If the change in the debtor's financial condition was either insubstantial or anticipated, or both, the doctrine of res judicata will prevent the modification of the confirmed plan." *Id.* at 150. Once the movant has demonstrated the debtor's change in circumstances is both substantial and unanticipated, modification is permitted so long as the purpose of the modification complies with § 1329(a) and the proposed modification complies with § 1329(b)(1). *In re Adams*, 654 B.R. 703, 707 (Bankr. M.D.N.C. 2023) (citing *Murphy*, 474 F.3d at 150.).

In *Murphy*, the Fourth Circuit emphasized the degree of finality that should be afforded to confirmed chapter 13 plans, unless there is a substantial and unanticipated change. Otherwise, the doctrine of *res judicata*, "which is applied in this circuit per *In re Arnold*, ensures that confirmation orders will be accorded the necessary degree of finality, preventing parties from seeking to modify plans when minor and anticipated changes in the debtor's financial condition take place." 474 F.3d at 149. The Court then undertook analysis of when such a modification would be appropriate by addressing the facts of the two consolidated cases before it.

In the first case, the debtors, the Goralskis, had refinanced a mortgage on their home. The Court found that

> all [they] did was to eliminate a portion of their equity in the property for cash in exchange for a corresponding amount of debt. Thus, even when one considers that [their] residence appreciated in value post-confirmation, at most, they simply received a large loan in place of a small one. By any stretch, a loan, regardless of the size, is not income.

*Id.* at 150. The court pointed out that their balance sheet confirmed the debtors had

had "virtually no change to their financial condition." *Id*. Therefore, it held since

that there had been no substantial change in the debtors' financial position, there

was no basis to require a modification of their confirmed plan.

In the second case, debtor Murphy sold his condominium for a profit of 51.6%

after having been in his chapter 13 case for only eleven months. The court found his

situation to be easily distinguishable from that of the Goralskis, as there had been

no improvement in the Goralskis' financial situation, while Murphy received "a

substantial amount of readily available cash without any debt." *Id*. at 152. The

court further found that a 51.6% increase in the value of the condominium in less

than one year was unanticipated.

The District Court for the Eastern District of Virginia and this Court have

interpreted *Murphy* to further elucidate when a change in circumstances may be

substantial and unanticipated, as compared to minor or anticipated. In *Martinez v.*

*Gorman*, 607 F. Supp.3d 680 (E.D. Va. 2022), the court addressed a trustee's

motion to modify the plan of a debtor whose expenses were reduced by $300 a

month because he had refinanced his former marital home. The bankruptcy court

had found that the change was both substantial and unanticipated and granted the

trustee's motion. The district court found that the bankruptcy court erred in failing

to take into consideration the totality of the facts and circumstances surrounding

the refinance, which had arisen in a divorce situation. In that case, the district

court held that "the $300 savings from the mortgage refinancing, when considered

in isolation, does not constitute a substantial change in the Debtor's financial circumstances" *Id.* at 686 (suggesting that an appropriate benchmark may be a 50% swing in income). Rather than viewing the monthly savings in isolation, the Court directed the Bankruptcy Court to" assess the *aggregate effect of these financial changes* to determine whether the Debtor has experienced an unanticipated and substantial change in Debtor's financial position which would permit modification of the Confirmed Plan as an exception to the doctrine of *res judicata.*" *Id.* (emphasis added).

Similarly, in *Goodman v. Gorman*, 534 B.R. 656 (E.D. Va, 2015), the District Court for the Eastern District of Virginia addressed the situation of a debtor who had inherited $36,000 from her mother. The chapter 13 trustee moved for a modification of the debtor's plan to include the inheritance in the funding of the confirmed plan. The district court affirmed the finding of the bankruptcy court that the inheritance was a substantial and unanticipated change in the debtor's case. The debtor conceded that receipt of the funds was unanticipated but claimed that it was not substantial, arguing that her increased living expenses required that she retain the inheritance. The bankruptcy court rejected that argument, as the debtor had presented no evidence to support her claim of necessity. In analyzing the case, the district court instructed that

> [b]ecause a Chapter 13 plan may be modified under 11 U.S.C. § 1329 commensurate with a debtor's increased ability to make payments required under their plan, "[w]hen a [Chapter 13] debtor's financial fortunes improve, the creditors should share some of the wealth." Accordingly, the plain language of § 1306(a) prevents

12

> debtors from shielding a windfall inheritance acquired
> before their case is closed, dismissed, or converted, from
> repaying their creditors.

*Id*. at 661 (first quoting *Arnold*, 869 F.2d 240, 243 (4th Cir.1989); then citing

*Hamilton v. Lanning*, 560 U.S. 505, 520 (2010) (observing that the Bankruptcy Code

should not be interpreted in a way that "would deny creditors payments that the

debtor could easily make"); and then citing *Murphy*, 474 F.3d at 154)

(acknowledging that *Carroll v. Logan*, 735 F.3d 147 (4th Cir. 2013) "left the door

open to courts deciding how much of an inheritance should come into a bankruptcy

Plan").

In *In re Swain*, 509 B.R. 22 (Bankr. E.D. Va. 2014), the debtors and the

chapter 13 trustee acknowledged a substantial and unanticipated change in the

debtors' income required modification of the confirmed plan, but they differed as to

what extent the confirmed plan should be modified to account for that change. In

determining that the trustee's motion to modify should be granted, the Court

examined the facts and circumstances of the case, particularly the good faith of the

debtors, the feasibility of the proposed modification, and the best interest of

creditors. The Court considered those factors as well as the debtors' increased

income in determining the amount by which the plan payments should be

increased, declining to consider the increased income in isolation. *Id*. at 34.

In *In re Ilyev*, 2022 WL 2965029, 2022 Bankr. LEXIS 2046, the trustee moved

to modify the debtor's plan. The debtor had obtained a mortgage forbearance for

eighteen months during the COVID pandemic. This relieved him of monthly

payments of $1625. The court held that "[w]hether a change in financial condition is significant enough to be considered substantial depends on the facts and circumstances of each case." *Id.* at *3, 2022 Bankr. LEXIS 2046, at *6 (citing *Martinez*, 607 F. Supp.3d. 680 and *Goodman*, 534 B.R. 656 with approval). The court found that under the circumstances, the decrease in mortgage payments constituted a substantial change in the debtor's financial condition. In particular, the court noted that the debtor was still in possession of at least $11,000 of the saved funds, did not appear to have been affected by COVID, and had not had a decrease in income throughout duration of the case. *Id.* at *2, 2022 Bankr. LEXIS 2046, at *4. Therefore, it determined that the debtor should make a good-faith effort to turn over the "lion's share" of the saved funds to the trustee for distribution to creditors.

The same approach was outlined by this Court in *In re Robinson*, 2023 WL 2563537, 2023 Bankr. LEXIS 699. In that case, the debtor received a cash insurance settlement totaling $91,174.53, from which she received a direct payment of $82,544.03 that she did not report to her chapter 13 trustee. There was no motion by either the debtor or the trustee to modify the already-confirmed plan. Instead, the trustee successfully moved to have the case dismissed for the debtor's bad faith in failing to disclose the receipt of the insurance funds. 2023 WL 2563537, at *9, 2023 Bankr. LEXIS 699, at *25. However, in its analysis of the case before it, the Court recited approvingly the *Murphy* "substantial and unanticipated" standard for modification, noting that "[i]f the Chapter 13 Trustee, a creditor, or the Debtor had

moved to modify the chapter 13 plan pursuant to § 1329 in light of the Debtor's substantial and unanticipated receipt of the Proceeds, such a modification likely would have occurred." *Id*. at *6, 2023 Bankr. LEXIS 699, at *17.

Other courts in the Fourth Circuit have had occasion to evaluate whether a chapter 13 plan should be modified after a debtor's post-petition receipt of property. In *In re Hmok*, 663 B.R. 674 (Bankr. W.D.N.C. 2024), a recent case from North Carolina, the debtors' post-petition sale of their home netted them $140,000, a 49% appreciation in its value since the inception of the case. Nonexempt sales proceeds were $51,228. The debtors moved to modify their confirmed plan, proposing to retain some of the proceeds but turn over $35,000 to the trustee to be applied to their plan. The trustee objected. The court conducted a thorough examination of the facts and circumstances of the case and determined that the debtors' situation did not justify their retention of any proceeds. *Id*. at 684-85. The court found that "the current financial circumstances of the Debtors do not support the argument that the sale proceeds are a replacement for lost income or needed to pay the necessities of the Debtors." 663 B.R. at 685. *See also In re Steinke*, Case No. 24-00511-5-DMW, 2024 WL 5264694, at *4 , 2024 Bankr. LEXIS 3095, *10 (Bankr. E.D.N.C. Dec. 31, 2024) ("The Fourth Circuit has made it abundantly clear that upon liquidation, a debtor may be required to pay the post-petition appreciated value of the debtor's petition date property interest to pay a higher dividend to unsecured creditors.").

In another North Carolina chapter 13 case, *In re Adams*, 654 B.R. 703 (Bankr. M.D.N.C. 2023), the debtor sold real property six months after plan

confirmation, garnering a $29,000 profit, which constituted an 11% increase from

the valuation on the debtor's schedules. The trustee moved that the debtor's plan be

modified to provide for the additional nonexempt funds to be distributed to

unsecured creditors. The court found that the receipt of the increased sale proceeds

in the form of readily available cash without any debt was a substantial change in

the debtor's financial circumstances. *Id.* at 708. In addition, the court was

persuaded by the fact that if the plan were not modified to include the profit, the

debtor could subsequently convert the chapter 13 case to chapter 7, explaining that

> [W]hen nonexempt proceeds from an unanticipated
> post-confirmation sale of property are not committed to
> funding the plan, "conversion or dismissal after the sale
> could leave creditors with less than they were entitled to in
> the Chapter 13 case." As attorney for the Trustee argues,
> there would be nothing to stop a debtor after a
> post-confirmation sale of estate property from spending the
> proceeds and allowing the case to be dismissed or
> converted. Therefore, under the circumstances of this case,
> the sale itself was a substantial and material change in the
> creditors' protection as contemplated in the Plan.

*Id.* at 709 (quoting Keith M. Lundin, *Lundin on Chapter 13*, § 127.6, at ¶ 3 &

§ 120.3, at ¶ 45, LundinOnChapter13.com (last visited Mar. 28, 2025). The court

also found, after an examination of the facts, that the increased value of the real

estate could not have been reasonably anticipated at the time the plan was

confirmed, and the debtor's retention of the additional proceeds would constitute a

windfall to the debtor. *Id.* at 710. Accordingly, it granted the trustee's motion to

modify the debtor's plan. *See also In re Matusak*, No. 14-02032-5-SWH, 2017 WL

4174361, at *4, 2017 Bankr. LEXIS 3166, *10 (Bankr. E.D.N.C. Sept. 19, 2017) (finding a post-petition income increase of "approximately 73%" to be substantial).

In the wake of *Murphy*, other courts outside the Fourth Circuit have considered the issue of post-confirmation modification of chapter 13 plans. Some of the decisions finding substantial and unanticipated changes justifying modification include *Johnson v. Fink* (*In re Johnson*), 458 B.R. 745 (B.A.P. 8th Cir. 2011) (husband debtor's loss of a second job resulting in monthly decrease in income of $1240.00 was sufficient to modify plan to reflect the lost income); *In re Hernandez*, Case No. 3:12-bk-237-JAF, 2015 WL 393410, 2015 Bankr. LEXIS 267 (Bankr. M.D. Fla. Jan. 28, 2015) (increased income not unanticipated but receipt of large tax refund was substantial and unanticipated and must be reflected in modified plan); *In re Hutchison*, 449 B.R. 403 (Bankr. W.D. Mo. 2011) (debtor who was having difficulty making her monthly payments to trustee as result of her high medical costs and relocation to address her medical condition demonstrated a substantial, unanticipated change in circumstances); *Coastal Credit, LLC v. Mellors* (*In re Mellors*), 372 B.R. 763 (Bankr. W.D. Pa. 2007) (post-confirmation discovery that vehicle that was debtors' sole source of transportation was irreparably damaged was unanticipated and substantial and justified modification of plan); and *In re Ireland*, 366 B.R. 27 (Bankr. W.D. Ark. 2007) (debtors' monthly income reduction from $4559 to $3710 resulting from husband debtor's change of jobs was substantial and unanticipated). *Cf. Credit Servs. of Am., PCA v. Swackhammer* (*In re Swackhammer*), 650 B.R. 914 (B.A.P. 8th Cir. 2023) (Chapter 12 plan modification

for agricultural losses approved as being substantial and unanticipated). Courts finding no substantial and unanticipated change include *In re Doherty*, Case No. 3:12-bk-1929-PMG, 2015 WL 631335 (Bankr. M.D. Fla. Feb. 10, 2015) (not reported on Lexis) (increased monthly payments proposed by the Trustee predicated solely on capital gain income but for which debtors received no actual funds or cash distributions not substantial and unanticipated); *In re Savilonis*, Case No. 3:12-bk-5762-JAF, 2014 WL 3361986,2014 Bankr. LEXIS 2972 (Bankr. M.D. Fla. July 9, 2014) (debtor's voluntary and unnecessary expenses, such as subsidizing his non-dependent adult child, did not justify debtor's proposed modification of his plan and were not unanticipated); *DeHart v. Eckert* (*In re Eckert*)*,* 485 B.R. 77 (Bankr. M.D. Pa. 2013) (trustee's motion to modify denied when court found increased income of 36% attributable to mandatory overtime not substantial or unanticipated change); and *In re Grutsch*, 453 B.R. 420 (Bankr. D. Kan. 2011) (debtor's proposed modified plan to shorten plan's commitment period after her voluntary retirement not allowed after court found no evidence that repayment over the remainder of the commitment period would be a hardship).

To the extent these cases address a chapter 13 debtor's change in financial circumstances, and whether the changes are substantial and unanticipated such that modification of the plan is appropriate, they are analogous to the case at bar because they apply the same "substantial and unanticipated" standard that triggers a debtor's duty to disclose. Accordingly, the Court must now determine whether the Debtor's acquisition of the Property was substantial and unanticipated.

The Debtor's acquisition of the Property was unquestionably unanticipated. "The Fourth Circuit has adopted the test applied in *Fitak* to determine whether a change in a debtor's financial condition was unanticipated. *Arnold*, 869 F.2d at 243 (citing *In re Fitak*, 92 B.R. 243 (Bankr. S.D. Ohio 1988)). "The *Fitak* test asks whether a debtor's 'altered financial circumstances could have been *reasonably anticipated* at the time of confirmation by the parties seeking modification.'" *In re Adams*, 654 B.R. 703, 709 (Bankr. M.D.N.C .2023) (emphasis in original) (quoting *Fitak*, 92 B.R. at 250). There is nothing in the record to suggest that at the time of confirmation of the Plan the Debtor had any reason to believe that her father was going to add her to the title of his home. Nor was there any reason to believe that the Debtor's father would pass away during the pendency of her bankruptcy case, leaving her an additional interest in the Property.

Whether the Debtor's acquisition of the Property should be considered "substantial" under Fourth Circuit precedent is not as clear. The Debtor acquired a one-half, undivided ownership interest in the Property with her father as joint tenant with the right of survivorship on June 18, 2021. Her father gifted the ownership interest to her after he met with an attorney to plan his estate. The Debtor neither moved into the Property nor received any additional income because of the gift. Based on the uncontroverted evidence presented at the hearing, the Court finds that Mr. Braddy added the Debtor to his title for estate planning purposes and to accommodate his caretaking needs; the conveyance was not intended to provide the Debtor with additional income or a fungible asset.

19

When her father passed away on August 8, 2022, the Debtor became the sole owner of the Property by operation of law. Pursuant to § 1306(a), the Property became property of the bankruptcy estate.[6] The Debtor did not move into the Property until her existing lease expired in August 2023; nevertheless, she began making payments toward the mortgage and repairs. Despite having acquired equity in the Property in the amount of $11,000, the Debtor neither sold nor refinanced the Property to generate proceeds. Neither did the Debtor rent the Property nor receive additional income through the acquisition since her children and grandchild were occupying the Property and had no ability to pay rent or contribute to the mortgage obligations. Consequently, the Debtor's ability to pay an increased amount to the Trustee was not enhanced even though she acquired an asset having $11,000 in unrealized equity.

"Whether a change in financial condition is significant enough to be considered substantial depends on the facts and circumstances of each case." *Ilyev*, 2022 WL 2965029, at *3, 2022 Bankr. LEXIS 2046, at *6. Most of the cases finding

---

[6] Unlike a chapter 7 bankruptcy case, an inheritance received more than 180 days post-petition is property of the chapter 13 estate and must be paid over to creditors upon the Trustee's motion to modify. *Carroll*, 735 F.3d at 151-52. "The repayment plan remains subject to modification for reasons including a debtor's decreased ability to pay according to plan, as well as the debtor's increased ability to pay." *Id.* at 151 (citing 11 U.S.C. § 1329).

> The Supreme Court has eschewed interpreting the Bankruptcy Code such that it "would deny creditors payments that the debtor could easily make." The plain language of Section 1306(a) blocks the [Debtors] from depriving their creditors a part of their windfall acquired before their Chapter 13 case was closed, dismissed, or converted.

*Id.* at 152 (quoting *Hamilton*, 560 U.S. at 520).

that a debtor's change in financial condition was substantial involved situations in

which the debtor unexpectedly received a significant amount of readily available

cash that substantially changed the debtor's ability to pay post-confirmation and,

upon payment to the trustee, would meaningfully enhance the payout to unsecured

creditors. *See, e.g., Johnson,* 458 B.R. 745; *Hernandez,* 2015 WL 393410, 2015

Bankr. LEXIS 267; *In re Hutchison,* 449 B.R. 403; *Mellors,* 372 B.R. 763; *Ireland,*

366 B.R. 27. Here, as in the Goralski's situation outlined in *Murphy,* the Debtor

received no funds or increased income because of her acquisition of the Property.

Although the Property had $11,000 in unrealized equity[7] when she became the sole

owner, the Debtor neither sold nor rented the Property, since her children (one of

whom is disabled) and grandchild continued to occupy it after her father's passing.

Rather, the Debtor's ability to pay diminished because she undertook to make

mortgage payments on the Property in addition to paying rent until her lease

---

[7] On December 20, 2024, the Court entered Standing Order No. 24-18 amending the Court's standard chapter 13 confirmation order in response to the Fourth Circuit Court of Appeal's decision in *Trantham v. Tate (In re Trantham),* 112 F.4th 223 (4th Cir.2024). Included in the revised form order is a requirement that "[t]he debtor(s) shall disclose the acquisition of real or personal property with a value that exceeds $15,000." Although this provision was not in effect during the relevant time periods in this case, the designation of a $15,000.00 threshold for the duty to disclose to avoid being in violation of the Court's confirmation order is noteworthy because the value of the Debtor's interest in the Property is below this threshold.

It is important to bear in mind that this Standing Order was not intended to alter or replace the requirements of *Murphy* to disclose a "substantial and unanticipated" improvement in a debtor's financial condition as the case law makes clear that whether a change in a debtor's financial condition is "substantial" depends on "the facts and circumstances of each case." *Ilyev,* 2022 WL 2965029, at *3, 2022 Bankr. LEXIS 2046, at *6. However, in this case, that the value of the Property is below the threshold included in the Standing Order is one factor that the Court will include in its consideration whether its effect on the Debtor's financial condition was "substantial" enough to trigger the Debtor's duty to disclose it

expired.[8] In contrast to the circumstances that existed in *Murphy* and similar cases
in which a debtor's ability to pay post-confirmation was substantially improved, the
Debtor's ability to pay was not improved by her acquisition of the Property but,
instead, was reduced. Accordingly, the Court finds that the aggregate effect of the
Debtor's acquisition of the Property did not substantially increase her ability to pay
her creditors.[9]

The Court also finds that the Debtor was unable to sell the Property to
monetize the equity. To do so would leave herself and her family homeless and
without sufficient resources to secure another home. Both her income and retention
of the Property were necessary to maintain the minimal needs of the Debtor and her
dependents.

The Court is mindful of the District Court's admonition in *Martinez* that "the
Bankruptcy Court should assess the aggregate effect of these financial changes to
determine whether the Debtor has experienced an unanticipated and substantial
change in Debtor's financial position which would permit modification of the
Confirmed Plan as an exception to the doctrine of *res judicata*," 607 F. Supp.3d at
686. Having done so, under the facts and circumstances of this case, the Debtor's

---

[8] The Court notes that the Debtor's rent prior to the expiration of her lease was $855 per month and
that the payment on the mortgage on the Property is $849 per month. The difference, which is
negligible, would have no effect on the Debtor's ability to increase her payments to the Trustee, even
after her lease obligations terminated.

[9] Although the parties stipulated to certain facts regarding the Debtor's receipt of federal and state
tax refunds, the Trustee presented no evidence and made no argument that the refund was either
substantial or unanticipated. Without such evidence or argument, the Court does not consider the
receipt of the 2023 tax refunds to be relevant to its analysis.

change in financial condition was not significant enough to be considered

substantial.

Having determined that the Debtor's change in financial condition resulting

from her acquisition of the Property was not "substantial" under the Fourth

Circuit's *Murphy* standard, it follows that the Debtor had no obligation to disclose

her acquisition of the Property.[10] Consequently, the Motion, which is premised on

the Debtor's failure to timely disclose her acquisition of the Property, is

unsupported.

Even if the Trustee were able to show that the Debtor had a duty to disclose

under these circumstances, the Court questions whether any failure would

constitute "bad faith" pursuant to recent case law from the Fourth Circuit. The

---

[10] In this case, the Debtor informed the Trustee of her ownership of the Property in a telephone conversation in August 2023; however, such notification to only the Trustee would not satisfy the duty to disclose to the extent such a duty exists. Unsecured creditors, in addition to the chapter 13 trustee, may seek modification of the plan pursuant to § 1329(a). The duty to disclose the post-petition acquisition of an asset in chapter 13 cases is usually best effectuated by the filing of an amended Schedule A/B. Section 521 of the Bankruptcy Code requires debtors to disclose their assets, 11 U.S.C. § 521(a)(1)(B)(i); however, Bankruptcy Rule 1007(h) deals with the disclosure of interests acquired after filing:

> If, as provided by §541(a)(5) of the Code, the debtor acquires . . . any interest in property, the debtor shall within 14 days after the information comes to the debtor's knowledge . . . file a supplemental schedule in the . . . chapter 13 individual debt adjustment case. . . . This duty to file a supplemental schedule continues even after the case is closed, except for property acquired after an order is entered . . . discharging the debtor.

Fed. R. Bankr. P. 1007(h). Since this Rule only requires disclosure of property described in § 541(a)(5) (inheritances and life insurance proceeds acquired within 180 days of filing), it does not explicitly require disclosure of property acquired more than 180 days after the petition date. Nevertheless, the duty to disclose remains. *See In re Calixto*, 648 B.R. 119, 126-27 (Bankr. S.D. Fla. 2023). Despite the lack of clarity regarding how and when a debtor must fulfill that duty, Bankruptcy Rule 1009 authorizes the debtors to amend their schedules "as a matter of course any time before the case is closed." Fed. R. Bankr. P. 1009(a)(1).

Debtor's failure to report her acquisition of the Property is attributable, in part, to the advice she received from her former attorney, Mr. Throop. While Mr. Throop correctly advised the Debtor to report certain changes in her income and address, the Debtor testified that he failed to advise her of her duty to report other changes in her financial condition. Recently, the Fourth Circuit Court of Appeals found that a bankruptcy court that sanctioned a chapter 13 debtor who sold her residence without prior court authorization failed to give adequate consideration to the erroneous advice she received from her bankruptcy counsel before determining that the debtor had acted in bad faith. *Sugar v. Burnett* (*In re Sugar*), 130 F.4th 358, 375 (4th Cir. 2025) ("On this record, [the debtor] may well have a viable argument that she reasonably believed that her actions complied with her Plan and any governing rules, that that she formed that belief and acted based on the advice . . . of her bankruptcy attorney.") While the advice of counsel defense is no panacea, the Fourth Circuit considers it a factor in determining whether a debtor has acted in bad faith. *Id.* at 376 ("[A] debtor's good faith reliance on advice of counsel is part of the totality of circumstances relevant to determining whether 'cause' exists to dismiss under § 1307(c)."). Attorney Throop's omission in this case is a factor that favors a finding that the Debtor did not act in bad faith in delaying her disclosure of her interest in the Property.[11]

---

[11] The Fourth Circuit also reaffirmed the continuing validity of its decisions in *Murphy* and *Arnold*:

> Beyond § 105(a)'s broad grant of authority, when circumstances so warrant, bankruptcy courts overseeing a Chapter 13 proceeding have specific statutory authority to respond to changed circumstances or

In light of the foregoing, the Trustee has not met her burden of establishing cause for conversion or dismissal pursuant to § 1307(c)[12]. Therefore, based upon the pleadings of the parties and the evidence, the Motion to convert or dismiss with prejudice must be denied.

*Plan modification.*

The Bankruptcy Code allows the debtor, trustee, or an unsecured creditor to request a modification of a confirmed chapter 13 plan

> [a]t any time after confirmation of the plan but before the completion of payments under such plan . . . to –
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan [or]
> (2) extend or reduce the time for such payments

11 USC § 1329(a)(1), (2).

The Debtor's first plan, dated November 15, 2019, and confirmed by order entered January 21, 2020 (ECF 12) (the "Plan"), provided for payments to the Trustee of $333.71 per month for 60 months for a total of $20,022.60. The Plan

---

violations that occur during a pending case. For example, a court can modify a confirmed plan under 11 U.S.C. § 1329, upon a showing "that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition." And under 11 U.S.C. § 1307, the court can convert the case to a Chapter 7 proceeding or dismiss it outright upon a showing of "cause." While § 1307(c) does not define "cause," it provides a non-exhaustive list of examples, including "material default by the debtor with respect to a term of a confirmed plan," and case law has further recognized that this term includes bad faith.

*Sugar*, 130 F.4th at 373 (4th Cir. 2025) (first quoting *Murphy*, 474 F.3d at 149; then citing *Kestell v. Kestell* (*In re Kestell*), 99 F.3d 146, 148 (4th Cir. 1996)).

[12] Moreover, conversion to chapter 7 would not benefit unsecured creditors, as the Property would not be part of the Debtor's bankruptcy estate in the absence of bad faith, which the Court has determined is not present in this case, 11 U.S.C. § 348(f), and dismissal would deprive unsecured creditors of their remaining distributions.

included (1) the payments of $8591.11 prorated over 43 months at an interest rate

of 6%, along with (2) a $100 adequate protection payment to United Auto Credit Co.

on account of its claim secured by the Debtor's 2011 GMC Terrain, (3) the payment

of arrearages attributable to the Debtor's residential lease totaling $2030.63,

(4) satisfaction of attorney's fees in the amount of $5296, (5) payment of a 1%

dividend to unsecured creditors, and (6) a commission of 10% to the Trustee.

The Amended Plan provides for payments to the Trustee of $334.92 per

month for 52 months followed by payments of $417.92 per month for an additional 8

months. It includes a payment of $57.22 to the County of Henrico, eliminates any

payment toward the Debtor's now-expired residential lease, and adds $3386.28 to

Fay Servicing, LLC, in estimated arrearages in connection with the Property.

Otherwise, the provisions of the Plan are unchanged by the Amended Plan. Thus,

the Amended Plan provides for (1) a minimal increase in payments to the County of

Henrico, a priority creditor, (2) an increase in payments to Fay Servicing, LLC, the

creditor secured by the Property, and (3) an elimination of payments attributable to

the Debtor's residential lease.

The Debtor's first plan was confirmed by the Court on January 21, 2020. The

Trustee has objected to confirmation of the Amended Plan. In order to overcome *res

judicata* and obtain confirmation of the Amended Plan, the Debtor is required to

establish that the change in her financial condition was both substantial and

unanticipated. *See Murphy*, 474 F.3d at 149 (4th Cir. 2007); *Arnold*, 869 F.2d at

243. Although the Amended Plan reflects the changes in the Debtor's financial

condition since the filing of her petition; as the Court has already determined, those changes were not substantial. Having found that the change in the Debtor's financial condition was not substantial, the Court will sustain the Trustee's objection and deny confirmation of the Amended Plan.

<em>Conclusion</em>

A chapter 13 debtor has a continuing duty to disclose an unanticipated and substantial change in his or her financial condition. Disclosure may be accomplished by filing amended schedules.[13] Under the facts and circumstances of this case, the Debtor's post-petition acquisition of the Property did not amount to a substantial change in her financial condition. For that reason, the Debtor's failure to timely disclose her receipt of the Property does not constitute sufficient cause for dismissal or conversion pursuant to 11 U.S.C. § 1307(c). Therefore, the Motion will be denied.

Having determined that the Debtor's receipt of the Property does not constitute a substantial change in the Debtor's financial condition, the Court will sustain the Trustee's objection and deny confirmation of the Amended Plan.

A separate order will be issued.

Signed: March 28, 2025

_____/s/ Keith L. Phillips_____
United States Bankruptcy Judge

Entered on Docket: March 28, 2025

---

[13] Bankruptcy Rule 1009 (a)(1) requires the debtor to give notice of the amendment to the trustee and any affected entity.

Copies:

Hester Regina Braddy
3204 Thompson Street
Richmond, VA 23222

Stephen L. Flores
Flores Law, PLLC
530 East Main Street, Ste. 320
Richmond, VA 23219

Suzanne E Wade
Suzanne E. Wade, Trustee
7202 Glen Forest Dr.
Suite 202
Richmond, VA 23226

Paul Georgiadis
7202 Glen Forest Dr.
Suite 202
Richmond, VA 23226

Matthew W. Cheney
Office of the US Trustee - Region 4 -R
701 E. Broad Street, Ste. 4304
Richmond, VA 23219